**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA DIAZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE GAP, INC., SONIA SYNGAL, and KATRINA O'CONNELL,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Joshua Diaz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, and announcements made by Defendants, public filings, wire and press releases published by and regarding The Gap, Inc. ("Gap" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial

1

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Gap securities between November 24, 2021 and July 11, 2022, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff Joshua Diaz as set forth in the accompanying certification, incorporated by reference herein, purchased Gap securities during the Class Period and was economically damaged thereby.

7. Gap operates as a global apparel retail company. The Company offers apparel, accessories, and personal care products for men, women, and children under the Old Navy, Gap, Banana Republic, and Athleta brands.

8. The Company is incorporated in Delaware and its head office is located at Two Folsom Street, San Francisco, California, 94105. Gap's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "GPS".

9. Defendant Sonia Syngal ("Syngal") served as the Company's Chief Executive Officer from March 2020 until July 2022.

10. Defendant Katrina O'Connell ("O'Connell") has served as the Company's Chief Financial Officer since March 2020.

11. Defendants Syngal and O'Connell are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

13. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15. Gap and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

16. In the second half of 2021 the Company introduced BODEQUALITY, a size-inclusivity campaign which introduced up to size 28 in all Old Navy stores.

17. In an August 26, 2021 press release, defendant Syngal touted the importance of BODEQUALITY as one of the Company's key drivers of long-term sustainable growth. The press release states in relevant part:

> "Our talented teams delivered our highest second quarter net sales in over a decade. Our strategy is driving growth as evidenced by continued strength at Old Navy and Athleta, Gap Brand's second consecutive quarter of positive 2-year comparable sales in North America, and momentum gaining at Banana Republic. Stepped-up marketing investments, improved brand management, and technology enhancements are paying off as our brand power cuts through," said Sonia Syngal, CEO, Gap Inc. "I look forward to our Integrated Loyalty Program and Old Navy's inclusive shopping experience, BODEQUALITY, taking hold in the back half, both key components of our Power Plan 2023, and important drivers of long-term sustainable growth."

**Materially False and Misleading
Statements Issued During the Class Period**

18. On November 23, 2021, after market hours, the Company issued a press release announcing it results for the third quarter ended October 30, 2021. In the announcement, the Company touted its BODEQUALITY launch. The press release states in relevant part:

> **Old Navy:** Net sales were up 8% versus 2019. Comparable sales were down 9% year-over-year and increased 6% versus 2019. Sales in the quarter outpaced available inventory as the brand was disproportionately impacted by supply chain delays, particularly within the women's assortment. ***Following the launch of BODEQUALITY, Old Navy's extended-size customer file has doubled since last quarter, with 15% of extended-size customers being new to the brand.*** These customers are increasingly shopping for the family across multiple categories, driving an increase in average transaction value.

(Emphasis added).

19. On November 24, 2021, the Company filed with the SEC its periodic report on Form 10-Q for the quarter ended October 30, 2021 (the "3Q21 Report") which was signed by Defendants Syngal and O'Connell. Attached to the 3Q21 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Syngal and O'Connell attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

5

20. The 3Q21 Report provided the following risk statement about the Company's inventory:

(1) *the risk that our inability to mitigate the impact of global supply chain disruptions on our business and operations and maintain inventory commensurate with customer demand* may adversely affect our results of operations; and (2) the risk that if we are unable to manage our inventory effectively, our gross margins will be adversely affected.

(Emphasis added.)

21. On March 3, 2022, the Company issued a press release announcing its financial results for the fourth quarter and fiscal year ended January 29, 2022. The press release stated in relevant part:

After two years of restructuring, including divesting smaller non-strategic brands, transitioning our European market to an asset-light partnership model and shedding underperforming North American stores, our core business is strong and we are poised for balanced growth across our four billion-dollar lifestyle brands … as our teams address near-term disruption from the acute headwinds that muted our fourth quarter performance, we are confident in our ability to execute against our long-term strategy, capitalizing on our investments in demand-generation, customer loyalty and artificial intelligence to accelerate profitable growth.

\* \* \*

Old Navy: Fourth quarter net sales were muted in part due to supply chain impacts, up 2% versus 2019 with comparable sales flat versus 2019. For the year, the brand crossed $9 billion in net sales, up 14% compared to fiscal year 2019 with comparable sales up 12% versus 2019. Leaning into its market leadership in Active, Denim and Kids and Baby, Old Navy is well-positioned as a Value brand, offering the Democracy of Style for the whole family at jaw-dropping prices.

(Emphasis added.)

22. On March 15, 2022, the Company filed with the SEC its annual report on Form 10-K for the year ended January 29, 2022 (the "2021 Annual Report") which was signed by Defendants Syngal and O'Connell. Attached to the 2021 Annual Report were certifications pursuant to SOX signed by Defendants Syngal and O'Connell attesting to the accuracy of

financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23. The 2021 Annual Report provided the following risk statement about the Company's inventory:

> (1) ***the risk that our inability to mitigate the impact of global supply chain disruptions on our business and operations and maintain inventory commensurate with customer demand*** may adversely affect our results of operations; and (2) the risk that if we are unable to manage our inventory effectively, our gross margins will be adversely affected.

(Emphasis added.)

24. The statements contained in ¶¶ 18-23 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) there were execution missteps in size and assortment at Old Navy related to BODEQUALITY which were adversely impacting Old Navy's margins and financial results; (2) contrary to the Company's statements, there were inventory risks relating to BODEQUALITY that were actually existing that were adversely affecting the Company's operations; and as a result (3) the Company's statements during the Class Period about the historical financial and operational metrics and purported market opportunities did not accurately reflect the actual business, operations, and financial results and trajectory of the Company, and were materially false and misleading, and lacked a factual basis.

25. Furthermore, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii), required defendants in their SEC filings above to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." The Company failed to disclose the trend that the Company was in fact unable to properly stock appropriately sized clothing in executing the Company's

7

BODEQUALITY program at Old Navy—which was having a materially adverse impact on the Company's profitability and sales.

26. Then on April 21, 2022, after market hours, the Company announced that Nancy Green, CEO of Old Navy had stepped down.

27. On this news, Gap's stock price fell $2.57 per share, or 17%, to close at $11.72 per share on April 22, 2022, on unusually heavy trading volume, damaging investors.

28. On May 20, 2022, during market hours, *The Wall Street Journal* published an article revealing that the Company had improperly managed its inventory of plus size clothing at its Old Navy stores causing material declines in margins and business results. The article states in relevant part:

> Old Navy set out to make clothes shopping more inclusive for women of all body types. It ended up with too many extra-small and extra-large items and too few of the rest, a mismatch that frustrated customers and contributed to falling sales and a management shake-up.
>
> \*   \*   \*
>
> It did away with separate petite and plus-size departments and grouped all sizes of each style together. Mannequins in varying body shapes displayed the new wares. All sizes of a style were priced the same, a break with an industry practice in which retailers charge more for larger sizes.
>
> \*   \*   \*
>
> ***Stores were selling out of the middle sizes and were stuck with piles of very small and very large sizes, the employees said. To clear out the excess goods, Old Navy put a large quantity of women's clothes on sale this spring.*** The move contrasts with other retailers that have held the line on discounting because of strong demand and supply-chain challenges that have kept some items in short supply.
>
> \*   \*   \*
>
> ***Ms. Syngal told analysts in November that Old Navy more than doubled the number of extended-size customers in its database since the launch and that 15% of customers who shopped for extended sizes are new to the brand.*** She said Old Navy, which makes many of its products in Vietnam, where factories were shut for an extended period due to the

8

pandemic, had been hurt by inventory shortages that persisted into the fourth quarter. In March, she said the brand suffered from not having enough fashionable dresses and tops, as consumers shifted to buying more of those items. Old Navy's stumbles don't bode well for Gap Inc. ***In 2021, Old Navy accounted for 54% of the company's sales and roughly 80% of profits, according to [Paul] Lejuez [a Citi analyst].***

\* \* \*

***Paul Lejuez, a Citi analyst, said the expanded sizes aren't bringing in enough new customers or getting existing customers to buy more. "If some of those sizes don't sell, it doesn't make sense to use up the floor space," he said.***

(Emphasis added.)

29. On this news, the Company's stock to fall 7% from closing at $11.19 per share on May 19, 2022 to closing at $10.33 per share on May 23, 2022, over the rest of trading May 20, 2022 and the next full trading day of May 23, 2022.

30. On May 27, 2022, the Company filed with the SEC a form 10-Q for period ended April 30, 2022. The 10-Q was signed and certified as to their accuracy by Syngal and O'Connell. In the 10-Q, the Company admitted that execution missteps in size and assortment of inventory at Old Navy adversely impacted the Company's financial results. The 10-Q states in relevant part:

> During the first quarter of fiscal 2022, our quarterly results were negatively impacted primarily by the continued global supply chain disruption, as well as product assortment and acceptance issues in key categories, largely at Old Navy, related to the post-COVID lifestyle consumer shift into occasion and work-based categories compared to the active and casual category preference last year. ***The quarterly results were also impacted by execution missteps in size and assortment at Old Navy related to BODEQUALITY, our extended size initiative launched in the third quarter of fiscal 2021.*** Global supply chain disruptions continued to affect our quarterly results due to difficulty managing the timing of seasonal inventory flows, and an inability to quickly react to changing consumer preferences. As a result, inventory levels are higher with an increase in extended-life basics and select seasonal basics being stored at distribution centers for expected introduction into the market in the second half of fiscal 2022 and first half of fiscal 2023. While we navigate these temporary headwinds, we remain focused on our key initiatives for our Power Plan strategy.

(Emphasis added.)

31. On this news, Gap's stock price fell 4.9% to close at $11.03 per share on May 31, 2022, further damaging investors.

32. On July 11, 2022, after market hours, the Company announced that Syngal was stepping down from her position as President and CEO of the Company, and resigned from the Board of Directors.

33. On this news, Gap's stock price fell 5% to close at $8.32 per share on July 12, 2022, further damaging investors.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Gap securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's securities met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- as a public issuer, the Company filed public reports;

- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

41. Based on the foregoing, the market for the Company securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

47. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

48. Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiff and the Class.

49. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

50. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

51. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

52. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

55. As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition

and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

56. Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

57. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 5, 2022 **THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*